THOMAS HALPIN, Respondent *v.* THE PHENIX INSURANCE COMPANY, Appellant.

Where a finding of fact by a court or referee is without evidence to support it, it is a ruling upon a question of law (Code Civ. Pro. § 993) and if excepted to, presents a legal question reviewable here.

It is not necessary for the purposes of such review, that the case should show that it contains all the evidence; the exception appearing in the proposed case serves as a notice to the respondent of an intention to raise the question of legal error, and puts on him the responsibility of adding, by amendment, any omitted evidence on the question.

*Porter* v. *Smith* (107 N. Y. 531), distinguished; *Cox* v. *James* (45 N. Y. 557), so far as this question is concerned, stated to have been overruled.

Defendant issued a policy of fire insurance upon a building described therein as " occupied as a morocco factory ;" the policy contained a provision making it void in case the building became vacant or unoccupied, without the consent of the company. The building was used for a manufacturing business until about six months before the fire; after that no business was carried on in it. All the machinery remained on the property, but the building was closed and locked and in the hands of an agent for rent. The agent had the key and made frequent visits to the property to show it to persons who came to hire it, and a watchman lived next door ; but when or how often he visited the property did not appear, plaintiff had not visited it within a month before the fire. *Held,* that the building was, at the time of the fire, unoccupied within the terms of the policy, and that, therefore, it was void.

*Johnson* v. *N. Y. B. F. Ins. Co.* (39 Hun, 410); *Paine* v. *A. Ins. Co.* (5 T. & C. 619); *Whitney* v. *B. R. Ins. Co.* (72 N. Y. 117); *A. L. Works* v. *W. C. F. Ins. Co.* (2 Fed. Rep. 488); *Keith* v. *Q. F. M. Ins. Co.* (10 Allen, 228); *Ashmeith* v. *Ins. Co.* (112 Mass. 422), distinguished.

To constitute occupancy of a building used for manufacturing purposes there must be some practical use or employment of the property. Its use as a place of storage merely is not sufficient.

A condition against non-occupancy must be construed and applied in reference to the subject-matter of the contract and the ordinary incidents attending the use of the insured property.

An insurer has, where the policy contains such a condition, a right by the terms of his policy to the care and supervision which is involved in the use of the property contemplated by the parties at the time of entering into the contract.

Where there is no dispute as to the amount of a debt, a tender may always be restricted by such conditions as by the terms of the contract the debtor on payment has a right to insist upon, and to which the creditor has no right to object.

A mortgagor, therefore, has a right to attach as a condition of payment of the debt secured, that the owner execute a satisfaction of the mortgage.

A tender, to be effectual for the purpose of stopping interest and prevent costs, must be kept good by the debtor, and whenever he seeks to make it the basis of affirmative relief it must be paid into court, so that the creditor may get the money, and that fact must be alleged in the pleading.

Where, however, no objection is taken by the pleadings on the other side to a failure to allege payment into court, the act may be performed on trial, and, in the absence of any objection then taken, the presumption on appeal is that it was performed.

(Argued October 17, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order

made December 14, 1886, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel the defendant to execute and deliver to the plaintiff a satisfaction of a mortgage executed by the plaintiff and his wife to the East Brooklyn Savings Bank, and subsequently assigned to defendant, and to deliver up the bond secured by said mortgage.

The defendant had issued a policy of insurance for $2,500 to the plaintiff upon the building on the mortgaged premises which contained a condition making it void in case said building became vacant or unoccupied without the consent of the company, which policy was assigned to the mortgagee. The mortgagee also held a policy for a like amount in the Williamsburgh City Fire Insurance Company. The buildings were destroyed by fire on January 4, 1884, and soon thereafter the Williamsburgh company paid the amount of its policy to the mortgagee and such amount was indorsed upon the mortgage. The defendant refused to pay its policy on the ground that at the time of the fire, the buildings were unoccupied, and on or about April 17, 1884, took from the mortgagee an assignment of the bond and mortgage held by it, paying therefor the sum of $2,585.63. On December 31, 1884, the plaintiff, claiming that he was entitled to have credited on the bond and mortgage the amount of the policy issued by defendant, tendered to it the sum of $100 for interest and expenses incurred in and about the assignment and demanded that defendant deliver to him the bond and mortgage and execute and deliver to him a satisfaction of the mortgage, which defendant refused to do.

The trial court found as a fact "that at the time of the fire the insured premises were in charge of and in the occupancy of the plaintiff" and gave judgment for the plaintiff. To said finding defendant excepted.

*H. C. M. Ingraham* for appellant. The tender made by plaintiff did not extinguish the mortgage debt. (*Noyes* v. *Wyckoff*, 114 N. Y. 204; *Kortright* v. *Cady*, 21 id. 343;

*Tuthill* v. *Morris*, 81 id. 94 ; *Brooklyn Bank* v. *De Grauw*, 23 Wend. 341 ; *Woods* v. *Hitchcock*, 20 id. 47 ; *Story* v. *Krewson*, 55 Ind. 397 ; *Clark* v. *Mayor, etc.*, 1 Keyes, 9 ; *Beckner* v. *Boon*, 61 N. Y. 317.) The language of this policy is " vacant *or* unoccupied," and it is established that where those two words are connected by " or," if the premises are unoccupied, though they are not *vacant*, the policy is made void. (*Barry* v. *P. Ins. Co.*, 35 Hun, 601 ; *Herrman* v. *A. F. Ins. Co.*, 85 N. Y. 162 ; *Herrman* v. *M. Ins. Co.*, 81 id. 184.) The premises were unoccupied within the meaning of the policy. (*Herrman* v. *A. F. Ins. Co.*, 85 N. Y. 162 ; *Paine* v. *A. Ins. Co.*, 5 *T.* & *C.*, 609 ; *Keith* v. *L. M. F. Ins. Co.*, 10 Allen, 228.)

*Nathaniel C. Moak*, for respondent. If the facts found by the trial court were sustained by any evidence authorizing their finding they cannot be reviewed in this court but are here conclusive between the parties. (Code, § 1337 ; *Quincy* v. *White*, 63 N. Y. 375 ; *Reynolds* v. *Robinson*, 82 id 106 ; *People ex rel* v. *French*, 92 id. 306, 310 ; *Derham* v. *Lee*, 87 id. 604–5 : Matter of Ross, 87 id. 514, 517–8 ; *Hynes* v. *McDermott*, 91 id. 451, 464.) The case does not show that it contains all the evidence, or all the evidence bearing upon the question of occupancy of the insured premises, and hence the finding of the court that the premises insured were not " vacant or unoccupied " is not open to review here. (*Porter* v. *Smith*, 107 N. Y. 531 ; *Genet* v. *Brooklyn*, 21 N. E. Rep. 106 ; *Wait* v. *As. Co.*, 13 Hun, 371 ; *Woodruff* v. *I. F. Ins. Co.*, 83 N. Y. 133 ; *In re Ward*, 52 id. 397.) This is the defendant's policy, the conditions are its own, and must be construed most favorable to the insured, and the defendant is responsible for any uncertainty, or anything that is doubtful in this condition. (*Baley* v. *H. Ins. Co.*, 80 N. Y. 23 ; *Herrman* v. *M. Ins. Co.*, 81 N. Y. 184 ; *Hoffman* v. *A. Ins. Co.*, 32 id. 405 ; *Griffey* v. *N. Y. Ins. Co.*, 100 id. 417 ; *Reynold.* v. *C. Ins. Co.*, 47 id. 597 ; *Rosenwald* v. *Phœnix Ins. Co.*, 50 Hun, 174–5 ; *Runn* v. *H. Ins. Co.*, 59 N. Y. 387.) The words "vacant" or "unoccupied" must be construed with reference to

the kind of structure or building insured and the purposes for which used. (*Whitney* v. *B. R. Ins. Co.*, 9 Hun, 37; 72 N. Y. 118; *Herrman* v. *M. Ins. Co.*, 81 N. Y. 184; 12 J. & S. 444-452, 453; *Herrman* v. *A. Ins. Co.*, 85 N. Y. 162; *Barry* v. *P. Ins. Co.*, 35 Hun, 604; *W. A. Co.* v. *Mason*, 5 Bradw. 141; *Woodruff* v. *Ins. Co.*, 83 N. Y. 133, 141-4; *Cummins* v. *A. Ins. Co.*, 67 id. 260; *Franklin* v. *Kepler*, 95 Penn. St. 492; *P. Ins. Co.* v. *Tucker*, 92 Ill. 70-4; *Shackelton* v. *F. Ins. Co.*, 55 Mich. 288, 291; *Lasalle* v. *Ins. Co.*, 43 N. J. Law, 468; *Gibbs* v. *C. Ins Co.*, 13 Hun, 612, 620; *Gamewell* v. *M. Ins. Co.*, 12 Cush. 167; *O'Brien* v. *C. Ins. Co.*, 6 J. & S. 517; *Stupetski* v. *T. F. Ins. Co.*, 43 Mich. 373; *Eddy* v. *H. Ins. Co.*, 70 Ia. 472; *Kimball* v. *M. Ins. Co.*, 70 id. 511; *Morehouse* v. *Agricultural Ins. Co.*, 11 N. Y. Wkly. Dig. 228; 23 Hun, 294; *Whitney* v. *B. R. Ins. Co.*, 72 N. Y. 117; *Miller* v. *Oswego*, 18 Hun, 526; *In re Imperial Ins. Co.*, 83 Ky. 468; *Stensgaard* v. *N. F. Ins. Co.*, 36 Minn. 181; *Miaghan* v. *H. Ins. Co.*, 24 Hun, 58; *A. F. Ins. Co.* v. *C. B. M'fg. Co.*, 17 N. E. Rep. 771; *L. M. Ins. Co.* v. *Leathers*, 6 Cent. Rep. 901; *Poss* v. *Ins. Co.*, Lea. 704; *A. L. Works* v. *W. C. F. Ins. Co.* 2 Fed. Rep. 488; *Harrington* v. *Ins. Co.*, 124 Mass. 126; *Cummins* v. *A. Ins. Co.*, 67 N. Y. 260; *Woodruff* v. *Imperial*, 83 id. 133, 144; *Stupetski* v. *T. F. Ins. Co.*, 43 Mich. 375; *Kimball* v. *M. Ins. Co.*, 70 Ia., 513, 516; *Williams* v. *N. G. Ins. Co.*, 24 Fed. Rep. 625, 628; *Bennett* v. *A. Ins. Co.*, 106 N.Y. 243; *Herrman* v. *M. Ins. Co.*, 81 id. 184; *Miaghan* v. *H. F. Ins. Co.*, 24 Hun. 58.) No tender was necessary in this case to perfect plaintiffs' right of action. (*Richardson* v. *Jackson*, 8 M. & W. 298; *Coit* v. *Houston*, 3 Johns. Cas. 250; *Cole* v. *Blake*, Peake, 179; *Bull* v. *Parker*, 2 Dowl. (N. S.) 345; *Olean* v. *Traut*, 50 N. Y. 474; *Wilder* v. *Seelye*, 8 Barb. 408; *Smith* v. *Rockwell*, 2 Hill, 482; *Cutler* v. *Goold*, 43 Hun, 518; *Hausard* v. *Robinson*, 7 B. & Cress. 90; *Wheelock* v. *Tanner*, 39 N. Y. 481-486; *Cass* v. *Higenbotam*, 100 id. 248; *Kortright* v *Cady*, 21 id. 343; *Hartley* v. *Tatham*, 1 Keyes, 222; *Stoddard* v. *Hart*, 23 N. Y. 560.)

Brown, J. The appellant excepted to the finding that "the insured property, at the time of the fire, was in the occupation of the plaintiff," and asks this court to review that finding on the ground that it is without evidence tending to sustain it.

It is claimed by the respondent that that question is not reviewable here, for the reason that the case contains no statement that all the evidence given on the trial is contained within it and cites *Porter* v. *Smith* (107 N. Y. 531), in support of his contention.

In the case cited it was sought to have the General Term review a finding of fact made upon conflicting testimony, and this the General Term refused to do, in the absence of a statement in the case, that it contained all the evidence given on the trial and this court sustained that ruling.

The case has no application to the question now presented, as a finding without evidence to sustain it, is a ruling upon a question of law (Code, § 993), while a finding upon conflicting testimony, is a ruling upon a question of fact.    (§ 992.)

This court reviews rulings upon questions of fact on appeals from judgments entered upon reports of referees or on decision of a court without a jury, in the single instance of a reversal of the judgment by the General Term upon the facts. But a finding of fact without evidence to support it has always been regarded as a ruling upon a question of law, and if excepted to presented a legal question reviewable in this court. (*Mason* v. *Lord*, 40 N. Y. 477 ; *Cox* v. *James*, 45 id. 557 ; *Perkins* v. *Hill*, 56 id. 87 ; *Pollock* v. *Pollock*, 71 id. 137 ; *Sickles* v. *Flanagan*, 79 id. 224.)

Under the old Code exceptions to findings of fact were essential to their review upon appeal, whether they presented rulings upon questions of fact or rulings upon questions of law, and it was not necessary to their proper presentation to the General Term that the case on appeal should show affirmatively that it contained all the evidence given upon the trial. (*Perkins* v. *Hill*, 56 N. Y. 87.)

In the case cited it was held that when exceptions were taken to findings of fact and a case made for the purpose of

reviewing them, that it would be assumed that all the evidence in support of the findings excepted to was inserted in the case. That if any evidence was omitted by the party making up the case, it was the duty of the respondent to cause to be inserted by amendment all evidence which he deemed material to sustain the findings excepted to.

The new Code made no change in the mode of reviewing rulings upon questions of law. Exceptions must now be taken or the appellate court will not review such ruling. (§ 992 to 997.)

But as to rulings on questions of fact exceptions are not under the present Code permitted, and hence there is nothing to notify or warn the successful party of his oponent's intention to ask the appellate court to review such finding, unless there is a statement in the case on appeal that it contains all the evidence; and hence it was decided in *Porter* v. *Smith* (*supra*), that in the absence of such a statement the respondent might rely on the assuption that there was no intention to ask a review of rulings on questions of fact. But as to rulings on questions of law, there is no need to depart from the practice sanctioned in *Perkins* v. *Hill.* An exception appearing in the proposed case serves as a notice to the respondent of an intention to raise the question of error in the ruling excepted to, and puts on him the responsibility of adding by amendment any needed proof, upon the particular question, just as a certificate that the case contains all the evidence, notifies him of an intention to review the question of error in findings of fact based on the allegation of insufficient proof.

I have been unable to find any authority to the effect that this court would not review a finding of fact excepted to on the ground that there was no evidence to support it, unless the case affirmatively showed that it contained all the evidence, except the dictum to that effect in *Cox* v. *James* (45 N. Y. 557), and this ruling must be deemed to be overruled in *Perkins* v. *Hill.*

The learned judge who wrote the opinion in *Cox* v. *James.* concurred in the decision in the case last cited.

In the recent case of *Bedlow* v. *N. Y. Floating Dry Dock Co.* (112 N. Y. 369), the chief judge says, "exceptions to alleged findings of fact when they are unsupported by evidence * * * * * * present questions of law reviewable in this court.

In that case there was no certificate or statement to the effect that the case contained all the evidence.

These views lead to the conclusion that a statement that all the evidence given on the trial is contained in the case, is not essential to present for review in this court a finding alleged to be without evidence to sustain it.

The appellant is, therefore, correct in his claim that the finding excepted to is properly before the court for review, and we must assume that all the evidence introduced on the trial bearing upon the fact of occupancy has been inserted in the case.

We think the evidence does not justify the conclusion that the premises at the time of the fire were occupied within the meaning and contemplation of the parties to the contract.

The property is described in the policy as "occupied as a morocco factory." Manufacturing business was carried on there until July previous to the fire. The plaintiff lived in Newark, New Jersey, and he testified that he received rent up to July and after that no business was carried on there.

All the machinery remained on the property but the building was closed and locked and was in the hands of Edward Falkner, as agent for the plaintiff, for rent. Falkner had a key and made frequent visits to the property, sometimes to show it to applicants who came to rent it. John Halpin lived next door and was watchman there, but at what time or how often he visited the property does not appear. The plaintiff had not visited the building within a month preceding the fire which occurred on January 4, 1884.

It has been decided that a dwelling-house to be in a state of occupation must be the customary abode of human beings; not absolutely and uninterruptedly continuous, but the house must be the place of usual return and habitual stoppage.

(*Herrman* v. *Adriatic F. Ins. Co.*, 85 N. Y. 162; *Cummins* v. *Agricultural Ins. Co.*, 67 N. Y. 260.)

It was not in the contemplation of the parties to the contract under consideration that the building insured should be the home or the place of abode of any person and the decisions relating to similar provisions in policies upon dwellings are not material except to show that while a dwelling-house will not be regarded as occupied unless it is the home or dwelling place of some person, yet temporary absence, leaving the property for a short period unoccupied will not be regarded as a breach of the condition, while absence for a fixed definite period, even with the intention to return and occupy the property will violate the condition and render the policy void.

Thus in *Johnson* v. *N. Y. B. F. Ins. Co.* (39 Hun, 410), a temporary absence of eight or ten days before the fire was held not to violate a condition similar to the one we are considering and in *Paine* v. *Agricultural Ins. Co.* (5 T. & C. 619) it was said: "It is not necessary that some person should live in it every moment during the life of the policy, but there must not be a cessation of occupancy for any considerable portion of time."

In *Herrman* v. *Adriatic F. Ins. Co.*, (*supra*) it was held that a dwelling-house which was the summer residence of the plaintiff was not occupied within the meaning of the parties during the winter months although a farmer living on the plaintiff's farm or some member of his family visited the house regularly once a week, and the plaintiff and his wife made fortnightly visits but did not remain over night.

*Whitney* v. *B. R. Ins. Co.*, (72 N. Y. 118) was a case of insurance upon a saw-mill operated by water power where the policy was to be void if the premises became "vacant or unoccupied." No sawing had been done for sixteen or eighteen days before the fire, but there were logs at the mill which the plaintiff intended to saw; lumber was piled in the yard and a small quantity was in the mill from which up to the time of the fire sales were made. The suspension of work was temporary and the condition was held not to have been violated, the court saying "delays and interruptions inci-

dent to the business of conducting a saw-mill although involving a temporary discontinuance of the active use of the mill for sawing purposes would not, we think, make the mill vacant and unoccupied within the meaning of the policy. The evidence would not have justified the finding that the plaintiff had abandoned or intended to abandon the use of the mill."

In *Albion Lead Works* v. *Williamsburgh City Fire Ins. Co.*, (2 Fed. Rep. 488,) the works had been stopped for five days before the fire but were still used for storage and delivery of goods, requiring daily visits of one or more persons. It was said by the court that the condition avoiding the policy if the premises "became unoccupied" without the consent of the company must refer to something more than a mere temporary suspension of work at the mill." *Keith* v. *Q. M. F. Ins. Co.*, (10 Allen, 228) was a case of insurance on a trip-hammer shop, the policy containing a condition making it void in case the building remained unoccupied for thirty days without notice and it was held that "it was not sufficient to constitute occupancy that the tools remained in the shop and that the plaintiff's son went through the shop almost every day to see if things were right, but some practical use must have been made of the building." This case was followed in *Ashworth* v. *B. M. F. Ins. Co.*, (112 Mass. 422), a case of insurance upon a house and barn, the court saying that "occupancy, as applied to such buildings, implies an actual use of the house as a dwelling place and such use of the barn as is ordinary incident to a barn belonging to an occupied house or at least something more than a use of it for mere storage."

This citation of authorities is sufficient to show that to constitute occupancy of a building used for manufacturing purposes there must be some practical use or employment of the property. Its use as a place of storage merely is not sufficient.

The condition against non-occupancy must be construed and applied in reference to the subject-matter of the contract and of the ordinary incidents attending the use of the insured property. The insurer has a right by the terms of the policy to the care and supervision which is involved in the use of the

property contemplated by the parties at the time of entering into the contract.

Thus, as has been said, a policy on a church would not be deemed violated from non-occupation, because it was only used Sundays nor would a school-house be deemed unoccupied during vacation time. Nor a manufactory during suspension of business at night or on Sundays or holidays, or from breakage of machinery or from any other temporary cause, because these periods of non-occupation are incident to the uses of the property and in contemplation of the parties to the contract. But in this case there was a total and absolute suspension of business. The tenants who had used the property had moved away and the property was placed in the hands of an agent for rent. The owner was seeking for it new uses and new occupants.

There is nothing in the evidence to indicate that the business of manufacturing leather would necessarily be resumed by any one, but even if it was intended to rent it for such purpose only, it was, at the time of the fire, abandoned as a place of business and without practical use or employment and the insurer was therefore deprived of the care which would have been exercised over the property had it been so employed.

Under such circumstances we think it was unoccupied within the meaning of the policy. That this interpretation was the one understood by the parties finds strong corroboration in the fact that Falkner, the agent, was notified by the Williamsburgh company that the property was unoccupied and under a similar condition in the policy issued by that company obtained its consent that the "buildings remain unoccupied, commencing from November 1, 1883, " and paid an additional premium for such consent.

These views must lead to a reversal of the judgment but in as much as upon another trial other evidence may be produced it is deemed proper to refer briefly to the other points raised by the appellant.

It is claimed that the tender was not effectual to entitle plaintiff to the judgment for the reason that it was conditioned on the execution by defendant of a satisfaction of the mortgage.

The cases cited by the learned counsel for the appellant do not sustain this claim. The distinction must be observed between cases in which terms are added not embraced in the contract or which the acceptance of the tender would cause the creditor to admit, and those in which the conditions are such as the debtor, on payment of the debt, has a right to insist upon and to which the creditor has no right to object.

In the first class are all cases in which the tender is made on condition that it pay or extinguish the debt. The acceptance of such tender binds the creditor and compels him to admit that the sum tendered is the whole amount due and estops him from asserting the contrary.

This distinction is tersely stated by Lord Denman in *Bowen* v. *Owen* (11 Q. B. 130), as follows: "All persons who make a tender in form do so for the purpose of extinguishing debts. If they merely propose that the creditor shall take the sum offered and leave it open to him to prosecute his claim for more, such a tender is free from objection, but if a party says: ' I will not pay this money unless you give a receipt for it as the whole amount due' that is no legal tender."

Of this class of cases are *Noyes* v. *Wyckoff* (114 N. Y. 204); *Brooklyn Bk.* v *De Grauw,* (23 Wend. 342); *Wood* v. *Hitchcock* (20 id. 47), and the English cases cited in the opinion.

But where there is no dispute as to the amount of the debt, a tender may always be restricted by such conditions as by the terms of the contract are conditions precedent or simultaneous to the payment of the debt or proper to be performed by the party to whom the tender is made. ( *Wheelock* v. *Tanner*, 39 N. Y. 481; *Cass* v. *Higenbotam*, 100 N. Y. 253; *Saunders* v. *Frost,* 5 Pick. 259; *Ocean Nat. Bank* v. *Fant,* 50 N. Y. 474; *Cutler* v. *Goold*, 43 Hun 516; *Bailey* v. *County of Buchanam*, 115 N. Y. 297; *Smith* v. *Rockwell,* 2 Hill 482.)

In the case first cited the condition was that a mortgage should be discharged. In *Cass* v. *Higenbotam* the condition was that certain diamonds deposited as collateral to the debt

should be returned. In *Saunders* v. *Frost* a release was demanded. In *Ocean Nat. Bank* v. *Fant* it was held that a demand of payment of a promissory note without an offer to return collateral securities was insufficient to charge an indorser. In *Smith* v. *Rockwell*, it was held that a maker or indorser is not bound to pay a negotiable promissory note without receiving it as their voucher.

In *Cutler* v. *Goold*, it was held that the plaintiff was justified in requiring that certain negotiable notes given to defendant, and not due, should be delivered up to him as a condition of parting with the money tendered. And in *Bailey* v. *County of Buchanan*, it was recently held by this court that the obligee of a bond having the option to redeem has a right to demand as a condition of payment the surrender of the bond and all the coupons in the holders possession.

In all these cases the party making the tender had a legal right to insist as a condition of payment that the party to whom the tender was made do the things demanded, and for that reason coupling such condition to the acceptance of the tender did not destroy its effect.

A debtor who has transferred securities as collateral to the debt, has a legal right upon payment of the debt, to have such collaterals reassigned to him, and a tender of the debt is not destroyed by making a condition of its acceptance that the creditor transfer the collaterals to him, because that condition is one the debtor has a right to insist upon and the creditor no right to refuse; so a mortgagor who pays a bond and mortgage, has a legal right to have the mortgage satisfied on the record. In no way, except by a certificate of the holder of the mortgage, can that result be accomplished. It is within the terms of the contract between the parties, and is a thing which, on payment of the debt, the mortgagee is under an obligation to do and one which a court of equity would compel him to do. It is a condition, therefore, which the mortgagor has a right to attach to the tender of the debt, and does not destroy its effect. The tender found by the trial court was, therefore, sufficient.

It was incumbent upon the plaintiff to keep his tender good and upon the commencement of the action to have deposited the money in court. The effect of the tender is to stop interest and prevent costs, and to be effectual for such purpose must be kept good by the debtor. and whenever he seeks to make it the basis of affirmative relief, it must be paid into court, where the creditor can get it, and that fact alleged in the pleadings. It. then. becomes the creditor's money, and the debtor cannot dispute his right to it. (*Becker* v. *Boon,* 61 N. Y. 322; *Tuthill* v. *Morris,* 81 id. 100; *Sheriden* v. *Smith,* 2 Hill, 538; *Storer* v. *McGaw,* 11 Allen, 527.)

No objection was taken in the answer to the failure to allege a payment into court, and we think that act could, in the absence of any objections in the pleadings, have been performed on the trial. And as no objection was taken at the trial, the assumption must now be that it was performed.

Opportunity was there given for objections, and when none are made and the party whose duty it is to object remains silent, all reasonable intendments will be made by the appellate court to uphold the judgment. (*Jencks* v. *Smith,* 1 N. Y. 90; *Ford* v. *Monroe,* 20 Wend. 210; *Carman* v. *Pultz,* 21 N. Y. 547.) We cannot, therefore, assume that an act so essential to the relief sought by the plaintiff was not performed.

The judgment should be reversed and a new trial granted, with costs to abide the event.

BRADLEY, HAIGHT, PARKER and POTTER, JJ., concur; POTTER, J., in result.

FOLLETT, Ch. J. and VANN, J., dissent.

Judgment reversed.