Bergan, J.
The mortgage which is the subject of this foreclosure action was given to secure performance of an agreement of purchase and sale of land subdivided into parcels between the predecessors of plaintiffs and defendant.
The agreement contained the following provision as to payment: “ Upon the sale or encumbrance of any part or parts, lot or lots, of the premises described in Schedule A, Purchaser shall pay to Seller the sum of Two Thousand and no/100 ($2,000.00) Dollars for each lot sold or encumbered. Seller shall accept Purchaser’s check as payment, subject to collection. As each lot is sold or encumbered and paid for as herein provided, Seller shall deliver to Purchaser a release of part of the mortgaged premises for such lot, prepared by Purchaser’s attorney, subject to approval by Seller’s attorney which shall not be unreasonably withheld.”
The controversy arises over the acts of the parties addressed to that paragraph. Defendant-appellant Dade shows that on November 27,1968, at a time when there was no default, it notified plaintiff's by mail that it was ready to pay $42,000 for the release from the mortgage of 21 specified lots. The letter from defendant’s attorney stated that he had in his possession a check for $42,000 which was tendered and demand made for delivery of releases of 21 specified lots. Plaintiffs refused to accept this offer.
That such an offer to pay that sum was made by letter and refused, and the manner in which it was made by letter, was found at Special Term and is not in dispute. What is in dispute ■ is the plaintiffs’ ground of refusal. Plaintiffs’ proof was they had imposed as a condition on the execution of a release that there be “ some evidence of a sale ”. This was based on the literal reading of the clause that release was required to be given on payment by check by the mortgagee of $2,000 on ‘ ‘ the sale or encumbrance ” of any part of the premises.
*460 Reading the contract this way, defendant would have to contract for, or perhaps make a “ sale ” of a lot before plaintiffs would accept $2,000 payment and release the lot. Defendant’s proof was that plaintiffs said they would not execute any releases for the $2,000 provided in the agreement because “ $2,000 would not be acceptable ”; but that a “ larger sum ” would be acceptable, “ $3500 being mentioned ”.
On the general issue the Special Term found favorably to the defendant; and although the Appellate Division reversed on the law and the facts, it, too, seems to have accepted the contention that plaintiffs stated they would not perform the covenant and would not accept $2,000 per lot, for the court observed that ‘ ‘ plaintiffs had orally indicated they were unwilling to release the lots to the defendant for the sum of $2,000 each”.
Further, there is no express denial by plaintiffs in the record of the defendant’s proof that the conceded refusal to execute the releases was due to an attempt to get more money.
It is not apparent what practical advantage would accrue to plaintiffs from an actual sale of a lot, if without a sale they were paid $2,000, since their interest in giving up their lien on it was fixed by agreement at $2,000. The parties could scarcely have meant that a sale must be consummated by defendant to a buyer subject to the mortgage lien before the right to pay for the release which would make the sale possible accrued. In this land development project, the object was to sell lots.
It is apparent, therefore, the reason for refusal was not that there was no “ tender ” of a check by defendant; or that the check was not good; or that plaintiffs wanted to be sure there had been a sale to somebody; but merely because plaintiffs were holding out for more money. The Special Term’s finding that they breached a condition of their agreement is thus consistent with the weight of evidence.
The Appellate Division placed rather heavy emphasis on its view that the letter referring to the check and the check were not a “ tender ” but merely an offer to make a tender and not, as the agreement contemplated, an actual delivery of a check. But the form of the offer played no part in the way the parties acted in the situation. Since plaintiffs said they would refuse *461 to accept the specified amount, the physical presentation of a check would have been futile.
In any event, the offer made by letter under the facts of this record amounted to a conditional offer to perform a covenant undertaking to which, as Williston notes (Contracts [3d ed., 1962], vol. 6, § 833, p. 104), the “ strict rules of tender are not applicable ”. It was a sufficient offer of performance to prevent plaintiffs from relying flatly on their defense that a check was not physically presented to them.
But this breach of an affirmative covenant by plaintiffs to release under the specific terms of the agreement of sale does not automatically wipe out the lien of the mortgage on the lots in dispute, as the Special Term held. That court refused judgment of foreclosure as to those lots even though the debt had not been paid and there had been a default in interest and taxes at the time of judgment, on the apparent ground that the plaintiffs’ breach as to releases terminated mortgagor’s other obligations. This seemed “ harsh ” to the Judge, but he observed: ‘ ‘ While the principal debt remains due, the refusal of tender operates as a discharge of the lien of the mortgage as to those lots for which tender has been made A broader view of the equities of the parties than this is required.
It would be inequitable to allow the defendant, having made an effort to perform a condition on which plaintiffs had an affirmative obligation but which they did not accept, to sit by thereafter on this past event and gain the remarkable consequence that the lien on 21 lots was gone and a $42,000 windfall had dropped down to defendant as mortgagor.
The decision in Werner v. Tuch (127 N". Y. 217), which the Appellate Division cited in support of its general holding, runs against such a result. In somewhat similar circumstances, it was there held as to the enforcement by mortgagors of an affirmative covenant undertaken by the mortgagees that, in seeking enforcement of the covenant, the mortgagors should “ keep the tender good” in order to obtain a judgment which would “ destroy the lien of the mortgage on account of a tender and refusal ” (127 N. Y., p. 223).
The Werner decision (opn. by Vakh, J.) restated a rule of long standing and very well understood. A tender on which equitable relief turns must be kept good (Hálpin v. Phenix Ins. *462 Go., 118 N. Y. 165; Tuthill v. Morris, 81 N. Y. 94, 99) and, of course, it continued to be the rule, after Werner (Jefferson Tit. <& Mtge. Gorp. v. Dempsey, 266 N. Y. 190,195 [1935]).
Since the plaintiffs’ refusal to entertain the offer to make payments was unjustified, equity would seem to require the parties be placed as far as now possible in the position they were in when the offer was made and refused, i.e., by requiring defendant to pay the amount offered in court at Special Term and pay all interest and taxes accrued until that time; in default of which the judgment in plaintiffs’ favor should stand.
The order should be modified, without costs, by remanding the action to Special Term to permit defendant to renew its offer to pay $42,000 and to pay interest and taxes to such date into court, in which event the judgment in plaintiffs’ favor should be vacated and the complaint dismissed; in default of which the present judgment should stand.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Order modified, without costs, and the case remitted to Special Term for further proceedings in accordance with the opinion herein and, as so modified, affirmed.