OPINION OF THE COURT
Joan B. Lefkowitz, J.
Plaintiffs are judgment creditors of defendant’s insured. They *873sue the defendant pursuant to section 3420 (a) (2) of the Insurance Law upon an unsatisfied judgment and seek to recover the policy limits plus accrued interest on the entire judgment. Defendant, in its answer, pleads affirmative defenses of tender and, alternatively, that its obligation for payment of interest, if any, is limited to the interest applicable to the policy limits and not any judgment in excess thereof.
On November 7, 1988 defendant’s insured, Michael Marchetti, Jr., was involved in an automobile accident which caused the death of Anthony Fama. In 1989, plaintiff Catherine Fama, the decedent’s widow, commenced an action for damages for wrongful death and for conscious pain and suffering, in her capacity as administratrix of the estate of Anthony Fama and a derivative claim on her own behalf, in the Supreme Court, Westchester County.
Defendant insured Michael Marchetti, Jr. under an automobile liability policy, No. 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-0, which provided for payment in case of an accident caused by the negligence of the insured in the sum of $10,000 per person and $20,000 for each accident. Pursuant to the terms of the policy and by operation of law that coverage increased to $50,000 for wrongful death claims (11 NYCRR 60-1.1 [a]). Defendant retained counsel for Mr. Marchetti in the underlying wrongful death action. An answer was interposed in January 1990.
On August 30, 1991 defendant’s claim representative wrote to defense counsel, with a copy to plaintiff’s counsel, as follows:
"enclosed please find our draft in the amount of $50,000, which represents settlement for the estate of Anthony Fama.
"Please hold this draft in escrow until appropriate releases have been received. Then send same to the Plaintiff’s [sic] attorney.”
Defense counsel communicated this offer orally and by letter of September 24, 1991 (which is not in the record). Plaintiff’s counsel responded by letter of October 1, 1991, which said in part:
"before any consideration can be given to the proposal in your letter, this office requires the following:
"1. A certified copy of the complete automobile liability insurance policy covering your client in effect at the time of the occurrence herein;
"2. Satisfactory proof of the non-existence of any umbrella and/or excess coverage.” *874On January 10, 1992, defense counsel transmitted a certified copy of the automobile policy to plaintiffs’ counsel. The record is silent as to whether defense counsel ever addressed the question of umbrella / excess coverage.
The underlying action went to trial before a jury and resulted in a judgment in plaintiffs’ favor on the wrongful death (but not conscious pain and suffering) claim. On December 17, 1992, the jury rendered its verdict and itemized the amounts awarded as follows: wrongful death, $1,314,446.05 of which $650,000 was awarded for economic loss sustained by the widow, $325,000 each for the economic loss sustained by the two children, $172.80 hospital expenses (later deducted in the judgment), $14,446.05 for funeral expenses, plus interest of $508,690.54 from date of death to date of verdict, for a total of $1,823,136.59. Judgment was entered on January 23, 1993 for that sum, plus costs of $1,378.51, for a grand total of $1,824,515.10, no part of which has been paid. The judgment was affirmed on appeal.
The subject policy provides in Part A — Liability Coverage, Supplementary Payments:
"In addition to our limit of liability we will pay on behalf of (the insured) * * *
"3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.”
The Superintendent of Insurance by appropriate regulation requires that all motor vehicle liability policies contain certain minimum provisions, which include an agreement to: "pay * * * all interest accruing after entry of judgment until the insurer has paid or tendered or deposited in court such part of such judgment as does not exceed the applicable policy limits” (11 NYCRR 60-1.1 [b]).
Defendant moves for summary judgment dismissing the complaint. Plaintiffs cross-move for summary judgment for the sum of $50,000 plus interest on the entire judgment of $1,824,515.10 at 9% per annum from January 23, 1993 (CPLR 5003, 5004). Defendant contends that it is not liable for any interest because it made a common-law tender or tender within the meaning of 11 NYCRR 60-1.1 (b) on August 30, 1991 and, alternatively, if it is liable for any interest, it is not responsible for the portion of the judgment which awarded preverdict interest as that is an element of damages and the award was *875otherwise in excess of policy limits so that the only interest component it can be held to pay is that portion of the postjudgment interest which is attributable to the sum of $50,000. Plaintiffs, in turn, urge that no tender occurred, that defendant is responsible to pay interest on the entire judgment including preverdict interest or, alternatively, that defendant must pay postjudgment interest on the sum of $50,000.
Tender
Defendant claims that it made a sufficient common-law tender so as to suspend the accrual of interest by its offer of August 30, 1991. Plaintiffs contend that the offer was conditional and that defendant’s failure to respond to plaintiffs’ reasonable counter offer seeking information before they could accept the draft negates the common-law tender.
In Lyons Acoustics v Big V. Props. (NYLJ, Aug. 28, 1994, at 33, col 3 [Sup Ct, Westchester County]) I said:
"Interest may be tolled prior to commencement of an action by common law tender Litwak v. Wolkenberg, 130 AD2d 630 [2d Dep't 1987]), tender after commencement of the action or offers to liquidate damages or compromise post-action (CPLR 3219, 3220, 3221) and by tender postjudgment. Meiselmann v. Allstate Ins. Co., 197 AD2d 561 (2d Dep’t 1993). At bar, we are only concerned with an alleged common law tender.
"Accumulation of interest can be halted by an appropriate tender, sufficient to satisfy the claims prior to commencement of the action. This common law tender must be unconditional, be actually produced and offered, be deposited in court prior to service of an answer and be asserted as an affirmative defense in the answer. Cruikshank v. Gordon, 118 NY 165 (1890); Frankuchen v. Frankuchen, 63 Misc 2d 348 (Civil Ct. New York 1970); 6 Carmody-Wait 2d, Tender Offer; Payment Into Court, §§ 41:1, 41:12, 41:13, 41:19, 41:24; 72 NY Jur. 2d, Interest & Usury, § 46; 83 NY Jur. 2d, Payment & Tender, §§ 140, 142, 143,166. When the tender meets those standards, it stops interest accrual as of the date of tender. Affiliated Credit Adjustors, Inc. v. Carlucci & Legum, 139 AD2d 611, 613 (2d Dep’t 1988).
"At bar, there is no evidence that the alleged tender was kept good * * * or any sum deposited into court.”
In this case, the statutory tender provision (CPLR 3219) is inapplicable by its terms, limited to contract actions, as is the offer to liquidate damages conditionally provision (CPLR 3220) and defendant did not avail itself of the offer to compromise *876provision (CPLR 3221). Thus, we are left with the putative common-law tender.
While it is true that ordinarily any tender must be unconditional (Kortright v Cady, 21 NY 343 [1860]; Meiselman v Allstate Ins. Co., 197 AD2d 561 [2d Dept 1993]; Shnark v Empire Mut. Ins. Co., 144 AD2d 795 [3d Dept 1988], lv dismissed 74 NY2d 715 [1989]; Rodriguez v Rodriguez, 93 AD2d 748 [1st Dept 1983], overruled on other grounds sub nom. Dingle v Prudential Ins. Co., 85 NY2d 657 [1995]; 6 Carmody-Wait 2d, NY Prac, Tender and Offer; Payment into Court, § 41:20 [1966 ed]), the fact that defendant conditioned its offer of the policy limits upon receipt of a general release did not vitiate the potential tender since the request for such a release is a natural incident of compromise and settlement of liability type claims. (See, 86 CJS, Tender, § 32; 74 Am Jur 2d, Tender, §§ 25-26; cf., 83 NY Jur 2d, Payment and Tender, §§ 152-153.) To have failed to obtain the release on behalf of the insured might have constituted a gross disregard of his interests and formed a predicate for a bad faith settlement within policy limits. (Cf., Soto v State Farm Ins. Co., 83 NY2d 718, 723 [1994]; Pavia v State Farm Ins. Co., 82 NY2d 445, 453 [1993]; DiBlasi v Aetna Life & Cas., 147 AD2d 93, 99 [2d Dept 1989]; 70 NY Jur 2d, Insurance, §§ 1661, 1662.) Plaintiffs’ response, for additional information by way of a request for a certified copy of the policy and proof of the nonexistence of any umbrella or excess coverage, was also reasonable. Thereafter, it seems there was a breakdown in communication and no formal statement concerning umbrella/excess coverage was given to plaintiffs. Defendant could have simply paid the $50,000 into court (CPLR 2601) which would have stopped the accrual of interest that eventuated from the verdict at trial. (11 NYCRR 60-1.1 [b]; Policy, Supplementary Provisions, No. 3, at 2.) This defendant failed to do.
The purported common-law tender was insufficient as it was not made before issue was joined, was not deposited in court at any time and there is no proof that the offer was kept good just prior to trial. (Nelson v Loder, 132 NY 288 [1892]; Becker v Boon, 61 NY 317 [1874]; Hills v Place, 48 NY 520 [1872]; Lyons Acoustics v Big V. Props., NYLJ, Aug. 28, 1994, at 33, col 3, supra; cf., Myers v Associates Discount Corp., 60 NYS2d 691 [Broome County Ct 1946].) Consequently, defendant’s offer to settle does not meet the standards of a common-law tender. (Murphy v Stirling, 66 Misc 2d 105 [Sup Ct, Monroe County 1971].)
That does not end our inquiry on the subject of tender. The applicable regulation precludes accrual of interest once "the *877insurer has paid or tendered or deposited in court” the sum representing policy limits (11 NYCRR 60-1.1 [b]). The policy itself precludes accrual of interest once the insurer makes an "offer to pay that part of the judgment which does not exceed” policy limits. In State Farm Mut. Ins. Co. v Tucker (Sup Ct, Nassau County, Sept. 28, 1990, Brucia, J., index No. 6044/90), Justice Brucia addressed whether an offei to pay policy limits to multiple claimants prior to trial constituted a tender within the meaning of 11 NYCRR 60-1.1 (b). He said (at 2-4):
"The word 'tender’ has not been defined in the aforesaid Regulation, and no documented history accompanied its promulgation to shed light on the Superintendent’s intent as to its meaning. 'Where a word is not defined in a regulation and there is no documented history which accompanies its promulgation shedding light on the administrative intent, the dictionary may be referred to in determining the sense in which the word is employed’. (2 NY Jur 2d Administrative Law, Sec. 105, pp. 158-159). Websters Third New International Dictionary (unabridged) defines the word 'tender’ as follows: (p. 2355):
" '1. An unconditional offer of money to pay a debt or of service to be performed in satisfaction of a debt or obligation that is made in order to save a penalty or forfeiture that would be incurred by non payment or nonperformance. 2. an offer or proposal made for acceptance — as (a) an offer of a bid for a contract * * * (b) an offering of securities for bidding, (c) an offer of compromise settlement made during litigation. 3. something that may be offered in payment’
"Thus, dictionary definition of the word 'tender’ is very broad in meaning, not only covering the common law definition of an unconditional offer of payment of a sum not less than the amount due on a specific debt or obligation with actual production the funds (59 NY Jur, Tender § 1, p. 3).
"Further, this Court is obliged to uphold the interpretation upon the language in the Regulation by the Agency charged with its administration, provided that its construction is not irrational or unreasonable (See Matter of Howard v. Wyman, 28 NY2d 434, 438). Given the fact that the Superintendent of Insurance had approved State Farm’s motor vehicle liability policy before it was issued (see: Vehicle and Traffic Law § (4) (d), there has been implicit approval of operational definition of the term as found in State Farm’s policy. Specifically, the Supplementary Payments provision of State Farm’s policy provides, in relevant part, as follows:
*878" Tn addition to our limit of liability, we will pay on behalf of a covered person * * *
"(3) Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage’ [underlining supplied].
"Thus, there has been tacit approval by the Superintendent of Insurance of a broad definition of the word 'tender’ which includes no requirement or condition precedent that specific money or that the specific policy proceeds be deposited into court as long as there was an unconditional offer to do so, as was the situation here * * *
"Construing the word 'tender’ in said Regulation § 60.1 in its natural and most obvious sense, and in accordance with the implicit definition approved by the Superintendent of Insurance, this Court is compelled to conclude that State Farm on August 29, 1989 did unconditionally tender the full policy limits of the subject automobile liability policy to satisfy the claims of the five plaintiffs in the underlying four pending personal injury actions.”
Justice Brucia also held that delivery of a check to the claimants who rejected the offer was not required. This decision was affirmed by the Appellate Division, Second Department on the opinion of Justice Brucia (188 AD2d 458 [2d Dept 1992]).
The record on appeal in State Farm Mut. Ins. Co. v Tucker (supra, microfiche No. 2-92-2514, Sup Ct Lib, White Plains) reveals that the insurer offered the Tucker claimants $10,000 and the other claimants the balance of $10,000 (policy limits of $20,000) in the underlying personal injury actions prior to trial. This was rejected by the Tuckers who proceeded to trial and obtained a verdict of $1,800,000.
Dictionary definitions are useful guideposts in determining the sense of a word used in a statute, regulation or contract. (Quotron Sys. v Gallman, 39 NY2d 428, 431 [1976]; McKinney’s Cons Laws of NY, Book 1, Statutes § 234.) It should be noted that legal dictionaries also define "tender” expansively. (Black’s Law Dictionary 1467 [6th ed] ["(a)n offer of money”]; Ballantine’s Law Dictionary 1264 [3d ed] ["(t)o offer to pay or perform an obligation”].) The language in the subject policy is identical with the language used by State Farm in the foregoing case. Plaintiffs argue that the rationale of State Farm Mut. Ins. Co. v Tucker (supra) is inapplicable as the action there was an interpleader and State Farm was not required to deposit *879money into court until a motion for judgment had been granted (CPLR 1006 [f]). However, even in interpleader actions there is no prohibition to depositing money in court while the action is pending (CPLR 2606), such deposit exonerating the payor only to the extent of the amount paid (CPLR 2601 [a]) with any question of interest to be resolved by the court (CPLR 1006 [f]). But, in any event, a review of the record on appeal in State Farm reveals that it was an action for declaratory judgment and not an interpleader and any attempt to distinguish the holding therein by reason of the form of the action is without merit.
As noted in State Farm Mut. Ins. Co. v Tucker (supra), the provisions of the motor vehicle insurance policies must meet certain minimum standards as prescribed by the Superintendent of Insurance (Vehicle and Traffic Law § 311 [4] [a]) and he is possessed with the power to issue appropriate regulations to insure that the purposes of the legislation is effectuated (Insurance Law §§ 201, 301). To this end, he must approve of the contents of motor vehicle insurance policies issued or delivered in this State (Vehicle and Traffic Law § 311 [4] [d]). In State Farm Mut. Ins. Co. v Tucker the court observed that the Superintendent had approved of the language used with respect to the accrual of interest and that was taken to mean the Superintendent had interpreted the statutes in similar fashion. Such interpretation, of course, is given great weight unless irrational. (Research Group v Department of Ins., 66 NY2d 444, 448 [1985].)
At bar, plaintiffs never requested that a check be delivered to them and, therefore, they waived any such requirement. (Geary v Dade Dev. Corp., 29 NY2d 457, 461 [1972]; Myers v Associates Discount Corp., 60 NYS2d 691, supra.) There is no requirement under the regulation or in the policy that the sole method of preventing accrual of interest means that the money must be paid into court. In fact, the regulation speaks in the disjunctive "has paid or tendered or deposited in court” (11 NYCRR 60-1.1 [b] [emphasis supplied]) and the policy merely requires an offer to pay.
Consequently, on the authority of State Farm Mut. Ins. Co. v Tucker (supra), the court is constrained to hold that a tender or offer to pay was sufficiently made when directly communicated to plaintiffs’ counsel no later than September 24, 1991, and such tender or offer to pay stopped the accrual of interest for which defendant could have otherwise been liable.
Therefore, defendant’s motion for summary judgment is granted to the extent that the part of the complaint which *880seeks interest preverdict and postjudgment is dismissed. However, defendant still must pay the policy limits of $50,000. The cross motion for summary judgment is granted insofar as it seeks the policy limits of $50,000 and is otherwise denied.