MARY A. CARAHER, AS EXECUTRIX, ETC., AND ANOTHER, RESPONDENTS, v. THE ROYAL INSURANCE COMPANY OF LIVERPOOL, APPELLANTS.

SAME, RESPONDENTS, v. THE HOME INSURANCE COMPANY, APPELLANT.

SAME, RESPONDENTS, v. THE SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY, APPELLANT.

MARY A. CARAHER, EXECUTRIX, ETC., RESPONDENT, v. THE STANDARD FIRE INSURANCE COMPANY, APPELLANT.

SAME, RESPONDENT, v. THE NEWARK FIRE INSURANCE COMPANY, APPELLANT.

SAME, RESPONDENT, v. THE AMERICAN CENTRAL INSURANCE COMPANY, APPELLANT.

*Insurance—loss by fire—when a building is "unoccupied"—what is not a levy on land— "loss payable to mortgagee"—evidence as to cost of building—trustee buying property of the corporation.*

Where a witness, called to testify in reference to the cost of rebuilding a structure destroyed by fire, has given his estimate, and the court has had the benefit of his judgment in the matter, he should not be allowed to answer the question: "Would you be willing to rebuild this building at these figures?"

A trustee of a corporation, a party defendant, individually, in a foreclosure action in which he has purchased the mortgaged property of the corporation at public sale, who pays from his own means apparently the full value of the property, enters into and continues in possession of the property without any antagonistic action by the corporation, and causes the property to be insured, is not, in case the premises are destroyed by fire, subject to the defense, in an action brought to recover from the insurance company the value of the property destroyed,

that the interest which he acquired in the property was not that of uncondi-tional and sole ownership, but that he held the same as trustee for the benefit of the corporation.

Under what circumstances a church can be said to be unoccupied, under the provisions of a policy of fire insurance thereon, considered.

A policy of insurance, containing a condition that the policy should be void if an execution should be levied on the property insured, is not rendered void by the issuing of an execution to the sheriff, followed by the giving of a notice of sale of the land on which the property insured is situated.

The provision in a policy of insurance that the loss, if any, should be payable to a mortgagee of the insured premises does not constitute part of the policy, but is simply an indorsement thereon, and is not essential to the validity of any other policies covering the same property, under the terms of an indorsement. "other insurance permitted concurrent in form herewith."

APPEAL by the Royal Insurance Company from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Oneida county on October 20, 1890, and like appeals by the other several defendants above named from like judgments in favor of the plaintiff in the several actions above named.

These actions were upon policies of insurance and were tried together, the evidence being deemed to be given in all the cases. There were separate reports and judgments and notices of appeal.

The defenses litigated at the trial were, (1) that the property was not of the value alleged; (2) that other policies of insurance, not concurrent in form, had been obtained by plaintiff's testator upon the property without consent, as required by the policies; (3) that the interest of plaintiff's testator in the property insured was not the entire, unconditional and sole ownership for his own use and bene-fit; (4) that the building insured, for many months prior to the fire was vacant or unoccupied without consent of the companies; (5) that prior to the fire the insured property had been levied upon by the sheriff by virtue of judgments and executions against the assured.

The policy issued by the Royal Insurance Company was dated April 2, 1887, and insured Patrick Caraher in the sum of $5,000, against loss or damage by fire for three years on the property described as follows: "On the brick church edifice, with slate roof, known as the 'St. Patrick's Church,' situate corner of Columbia and Huntington streets, Utica, N. Y." This policy contained, among others, the following conditions: "If the assured shall have, or shall

hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, * * * or if the property be sold or transferred, or any change take place in the title or possession (except in case of succession by reason of the death of the assured), whether by legal process, or judicial decree, or by voluntary transfer, or conveyance; or if this policy shall be assigned before a loss, without the consent of the company indorsed hereon, or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise, be not truly stated in this policy; * * * then, and in every such case, this policy shall be void."

" If the interest of the insured in the property be any other than the entire, unconditional and sole ownership of the property for the use and benefit of the assured, or if the building insured stands on leased ground, unless the lease be perpetual, it must be so represented to the company, and so expressed in the written part of this policy, otherwise the policy shall be void."

This policy also contained the following indorsements :

" Other insurance permitted concurrent in form herewith.

" Loss, if any, payable to L. M. Thompson, executor to the extent of his mortgage interest."

The policy issued by the Standard Fire Insurance Company insured " Rev. Patrick Caraher for the term of three years from the 20th day of January, 1888," in the sum of $3,500 against loss or damage by fire on the following described property: " $3,500 on his brick edifice, with slate roof, known as ' St. Patrick's Church,' situate on the south-east corner of Huntington and Columbia streets, Utica, N. Y."

This policy was in the form known as the " Standard Fire Insurance Policy of the State of New York," and contained, among others, the following conditions :

" This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

" This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or cir-

cumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein."

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy . * * * or if the interest of the insured be other than unconditional and sole ownership * * * or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

There was written upon this policy the words "other insurance permitted without notice until required."

The policy issued by the Newark Fire Insurance Company insured "Rev. Patrick Caraher for the term of three years from the 26th day of October, 1887," in the sum of $3,000 against loss or damage by fire to the following described property: "$2,500 on his brick church edifice, with slate roof, known as St. Patrick's Church, situate on the south-east corner of Huntington and Columbia streets, Utica, N. Y., $500 on organ therein."

This policy contained the same conditions as the Newark company policy, and it had on it the clause in writing: "Other insurance permitted without notice until required."

The policy issued by the Home Insurance Company insured "Patrick Caraher against loss or damage by fire, to the amount of five thousand dollars, on the brick church edifice, with slate roof, known as 'St. Patrick's Church,' situate corner of Columbia and Huntington streets, Utica, N. Y.," for the term of three years from April 2, 1887.

This policy contained, among others, the following conditions: "If the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written thereon; or if the above-mentioned premises shall be occupied or used so as to increase the risk,

or become vacant or unoccupied, without notice to and consent of this company in writing, * * * or if the property be sold or transferred, or any change takes place in title or possession (except by such succession by reason of the death of the assured), whether by legal process, or judicial decree, or voluntary transfer or conveyance; or if this policy shall be assigned before a loss, without the consent of the company indorsed hereon, or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in this policy, * * * then, and in every such case, this policy shall be void."

" If the interest of the insured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, or if the building insured stands on leased ground it must be so represented to the company, and so expressed in the written part of this policy, otherwise the policy shall be void."

" The cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same."

This policy also contained the following indorsements:

" Other insurance permitted, concurrent in form herewith."
" Loss, if any, payable to L. M. Thomson, executor, to the extent of his mortgage interest."

The policy of the Springfield Fire and Marine Insurance Company insured " Patrick Caraher against loss or damage by fire, to the amount of five thousand dollars on the brick church edifice, with slate roof, known as the ' St. Patrick's Church,' situate corner of Columbia and Huntington streets, Utica, N. Y.," for the term of three years from April 2, 1887.

This policy contained, among others, the following conditions:

" If the assured, in a written or verbal application, makes any erroneous representation, or omits to make known any fact material to the risk; or if the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, without the consent of the company written hereon, * * * or if an execution be levied on the property insured, or foreclosure of mortgage be begun, or the property be sold under a deed of trust,

or if the assured shall be adjudged a bankrupt, or if the property insured be assigned under any bankrupt or insolvent laws, or if any change takes place in the title or possession of the property, whether by sale, transfer or conveyance, legal process or judicial decree; or the policy is assigned without consent of the company indorsed hereon; or if the assured is not the sole, absolute and unconditional owner of the property insured; or (if said property be a building or buildings), of the land on which such building or buildings stand, by a title in fee simple, and the interest of the assured be not truly stated in the policy; * * * or if the premises hereby insured shall become vacated by the removal of the owner or occupant, and so remain for a period of more than thirty days, without notice to the company, and consent indorsed thereon; * * * then, and in every such case, this policy shall be void."

This policy also contained the following indorsements:

" Other insurance permitted concurrent in form herewith."

" Loss, if any, payable to L. M. Thomson, executor, to the extent of his mortgage interest."

The policy of the American Central Insurance Company insured " Rev. Patrick Caraher for the term of three years from the 23d day of August, 1887," against damage by fire to the amount of $3,000 " on the brick church building, with slate roof, situate on the south-east corner of Columbia and Huntington streets, Utica, N. Y." This policy contained the same conditions as the Newark Company policy, and on it was the clause, in writing, " Other concurrent insurance permitted."

On or about the 15th of March, 1871, the " St. Patrick's Church, Utica, N. Y.," was duly incorporated as a Roman Catholic church or society under the laws of this State, and on the 18th of March, 1871, it received from John McCloskey a warranty deed of the premises upon which the church stood at the time of the fire. At the time of the execution of this deed, Patrick Caraher was the pastor of the church, and continued to be such until about October 1, 1888, and during that time he was, as pastor, *ex officio* one of the trustees of the corporation. On the 14th of September, 1881, the corporation executed and delivered to the Mutual Life Insurance Company of New York a mortgage upon the premises for $21,000. On the 27th of December, 1886, this mortgage not being paid, an action to

foreclose it was commenced against the corporation and several other defendants, among whom was the said Patrick Caraher. In this action the usual judgment of foreclosure was entered on the 19th of February, 1887, and under it a sale of the premises was made on the 15th of March, 1887, for the sum of $26,700 to Patrick Caraher, he being the highest bidder therefor. On the 2d of April, 1887, in pursuance of the sale, the property was deeded to Caraher, he paying therefor the full amount of his bid with moneys of his own. Caraher, on receiving the deed, as the referee found, took possession of the property, and so remained down to the time of the trial, and retained and held his title thereto. On the 8th of November, 1889, the church edifice and its contents were substantially destroyed by fire, without any fault on the part of Caraher.

The referee also found that, at the time of the execution and delivery of the policies, and during all the time down to and until after the destruction of the property by fire, the interest of Caraher in the property insured was the entire, unconditional and sole ownership thereof for the use and benefit of the assured; that the actual cash value of the damage to the property and the actual loss suffered was $25,500; that the building in question did not become and was not, after the issuing of the policies down to the time of the fire, vacant or unoccupied; that all the policies were concurrent in form.

It further appears that, on May 21, 1889, John P. Kennedy recovered in the Supreme Court a judgment against Patrick Caraher for $5,349.28, which was duly entered and docketed in Oneida county on that day; that on the 25th of June, 1889, William J. Caraher obtained in the Supreme Court a judgment against Patrick Caraher for $245.35, which was duly entered and docketed on that day in Oneida county; that on or before October 19, 1889, executions in due form were issued on said judgments against the property of Patrick Caraher and delivered to the sheriff of Oneida county, and he thereupon advertised the said real property to be sold on the 30th of November, 1889, stating in his notice that he had seized and taken all the right, title and interest of Patrick Caraher in the real estate in question.

Since the trial Patrick Caraher has died, and the executrix in his will has been substituted in his place as plaintiff. Caraher, after his purchase, gave a mortgage on the property, and the mortgagee is a

party plaintiff in the cases against the Royal, the Home and the Springfield companies.

*A. H. Sawyer* and *I. N. Ames*, for the appellants.

*William Kernan*, for the respondents.

MERWIN, J.:

Two questions are presented which are involved in each of the cases — first, that the referee erred in finding the actual loss and damage to be $25,500; and, second, that the interest of Caraher in the property was not that of unconditional and sole ownership, and that, therefore, the policies by their terms were void.

(1.) The evidence was conflicting upon the subject of the amount of the loss. Witnesses upon either side made their estimates and stated the manner in which they arrived at results. We are of the opinion that the evidence warranted the conclusions of the referee upon the subject. In this connection the defendants claim that the referee erred in sustaining the objection of the plaintiffs to the question put by defendants to one of their witnesses: " Would you be willing to rebuild this building at these figures?" The witness was a carpenter and builder called by the defendants, and he had testified to making measurements and an estimate of the cost of rebuilding, and had stated what that estimate was, and what, in his judgment, was the amount of the damage to the building by the fire. He was then asked the question above set out. What the witness would be willing at the time of the trial to do was not the test. He had given his estimates, and the court already had the benefit of his judgment in the matter. The objection was properly sustained.

(2.) The proposition that the interest of Caraher was not that of unconditional and sole ownership is based on the circumstance that, at the time of his purchase at the foreclosure sale, he was one of the trustees of the corporation which had given the mortgage.

The claim of the defendants is that Caraher, being a trustee, could not purchase for his own benefit, and that the interest which he acquired in the property was not that of unconditional and sole ownership, but that he thereafter held the same as a trustee for the benefit of the church. The plaintiffs claim that the possibility that

the corporation might have the right in equity to pay Caraher what he had paid for the property, and compel him to convey to the corporation, is no defense to these actions; that this was a right which, if the corporation had it, it might or might not enforce at its option, and that the defendants cannot take advantage of it.

Many cases are cited by the learned counsel for the defendants to the general proposition that a trustee cannot deal with trust property to his own benefit, although he may hold it as security for what he has advanced. It is said that if he purchases such property the *cestui que trust* has the option of taking the benefit of the purchase. In *Duncomb* v. *N. Y., H. and N. R. R. Co.* (84 N. Y., 199) it is said the beneficiary may avoid the act of the trustee, but cannot do so without restoring what it has received. The cases cited by the counsel do not discuss the effect of such a situation upon a case like the one here in controversy.

The counsel for plaintiffs refers us to *Olcott* v. *Tioga Railroad Company* (27 N. Y., 546) and *Bicknell* v. *Lancaster Insurance Company* (58 id., 677) as supporting his view of the matter.

In *Olcott* v. *Tioga Railroad Company* it was held (p. 567) that a purchase of trust property by a trustee at public sale is good at law, and is in equity not void, but voidable only at the election of the beneficiary, and that the purchase cannot be impeached in a suit to which the beneficiary is not a party. Judge SELDEN says: "The mortgagor (the beneficiary) is the party most directly interested in the question and the validity of the sale cannot be impeached without its consent, or at least without giving it an opportunity to be heard."

In *Bicknell* v. *Lancaster City and County Fire Insurance Company* (1 Thomp. & Cook, 215) the action was on a policy which provided that the company should not be liable for loss for property owned by any other party unless the interest of such party was stated in the policy. The defendant alleged that Thompson & Judd were the equitable owners of the property, and that their interest was not stated in the policy. The plaintiff bid off the property at a receiver's sale, and the defendant on the trial offered to prove that the purchase at such sale, although in plaintiff's name, was in point of fact for Thompson & Judd. This being objected to was ruled out. The General Term sustained the ruling, it being

said that the plaintiff was the absolute owner so far as the defendant was concerned. This was affirmed in the Court of Appeals (58 N. Y., 677), it being said that plaintiff "had the legal title as against the whole world, save, perhaps, Thompson & Judd and their creditors, and as the owner of the legal title he could insure."

In *Noyes* v. *The Hartford Fire Insurance Company* (54 N. Y., 668) the defendant insured plaintiffs for $3,000 on a quantity of cotton in the gin-house. The policy contained a condition that "if the assured is not the sole and unconditional owner of the property insured" the policy should be void. It appeared that plaintiffs made an arrangement with one Flournoy to operate his plantation in Arkansas for one year, they to furnish certain supplies and Flournoy to attend to the work, the crop of cotton to be delivered to plaintiffs at the river bank for transport to market and sale, and the proceeds to be applied first to reimburse the plaintiffs for advances and the balance to be divided equally between the plaintiffs and Flournoy. While in the gin-house a portion of the cotton was destroyed by fire. It was held : " That by the terms of the agreement plaintiffs were not necessarily the sole and unconditional owners of the cotton, but that they were either partners or tenants in common with Flournoy in carrying on the plantation. But it appearing that plaintiffs had expended more than the whole crop of cotton was worth, and as, therefore, they were entitled, under the contract, to the entire proceeds, and Flournoy had no interest therein within the spirit and meaning of the policy, they were the sole and unconditional owners and entitled to recover the loss."

In *Carrigan* v. *Lycoming Fire Insurance Company* (53 Vt., 418), it was held that a conditional sale by the plaintiff, he remaining in possession, did not prevent his interest being the entire, unconditional and sole ownership for his use and benefit as required by the policy, it being said that the vendees, until they had complied with the conditions entitling them to a conveyance, had no more interest in the property than a stranger. So it has been held that an outstanding lease does not prevent the existence of such ownership. (*Ins. Co.* v. *Haven*, 95 U. S., 242; *Dolliver* v. *St. Joseph Ins. Co.*, 128 Mass., 315.)

In the present case, Caraher purchased at public sale upon a foreclosure judgment, to which he was individually a party defendant,

paying from his own means the full value apparently of the property and immediately entered into possession, and so continued until after the fire without any antagonistic action on the part of the corporation. If the corporation had an election, it failed to exercise it. The proceeds of the sale were applied to the benefit of the corporation.

Caraher, when he obtained the insurance, informed the agents of the respective companies that he had purchased the property. So that the companies knowingly dealt with him, as individual owner.

The finding of the referee on this subject should not be disturbed.

(3.) The further proposition is presented that the building insured became vacant or unoccupied on or about October 1, 1888, and so remained without consent of the insurance companies down to the time of the fire, and that, therefore, under the provisions of the policies in several of the cases, the insurance became void.

The referee found as matter of fact that the building did not become vacant or unoccupied.

Mr. Caraher, from the time he purchased the property, held therein public religious service until October, 1888. Soon after that time another pastor was appointed for the congregation and it worshipped at another place. No religious service was held in the church after October, 1888. There is evidence tending to show that Mr. Caraher quit holding services on account of ill health, and that this disability continued until after the fire; that, during all the time service was not held, and down to the fire the church was in the care of the sexton, who had been such for several years, and that he substantially took the same care of it that he did when service was held. Mr. Caraher continued all the time to reside in the dwelling in the same yard, and within fifteen feet of the church; and he testifies that he went frequently into the church; that the ornaments and vestments used in the service of the church remained there down to the fire, and that at the time of the fire there was everything in the church necessary for services. It appears that some months before the fire the gas meter was taken out of the church by the gas company.

The question seems to be whether, within the contemplation of the contract, the building became unoccupied in October, 1888, by reason of the cessation therein of church services. There was no warranty that church service should continue to be held there.

The fact that the insurance was to Caraher as individual owner rather rebuts the idea that the religious corporation and society that had previously owned and occupied were expected to continue to occupy for an indefinite period.

A condition of this kind is to be construed in view of the situation and character of the property insured and in view of contingencies as to its use within the reasonable contemplation of the parties. (*Whitney* v. *Black River Ins. Co.*, 72 N. Y., 120.)    The occupancy to be expected was not such as a church corporation that had procured insurance would be expected to have, but such occupation as an individual would have who had, for reasons satisfactory to himself, purchased the property.

The case of *Herrman* v. *Adriatic Fire Insurance Company* (85 N. Y., 162), is strongly relied on by the appellants.    There the plaintiff had procured an insurance upon his dwelling-house and thereafter left it for the winter, leaving it, however, furnished and in charge of a servant who lived near and who opened and aired it once a week, and the plaintiff also visited it once a fortnight. While in this situation it was destroyed by fire, and it was held that it was not occupied within the meaning of the condition of the policy.    It was said that for a dwelling-house to be occupied, within the meaning of the policy, it must be used by human beings as their customary place of abode.    That case would seem to be clearly distinguishable from the present.    And so is the case of *Halpin* v. *Phenix Insurance Company* (118 N. Y., 165).    There the property insured was described in the policy as "occupied as a morocco factory."    This indicated the use contemplated by the parties to the contract, and there having become a total and absolute suspension of business, it was held that the property became unoccupied within the meaning of the policy.    In *Halpin* v. *Insurance Company of North America* (120 N. Y., 73), it is said that forfeiture will not be permitted upon equivocal or doubtful language.    When the terms used permit more than one construction, that will be adopted which supports the validity of the policy. (*Darrow* v. *Family Fund Society*, 116 N. Y., 537.)

Caraher upon his purchase became owner and occupant.    Whether he ceased to occupy, or whether the property became vacant or unoccupied within the meaning of the policy, was, under the cir-

cumstances of this case, a question of fact and the finding of the referee should not be disturbed.

( 4.) The policy issued by the Springfield Company contained the condition that the policy should be void if an execution be levied on the property insured, and the other policies contained conditions rendering them void if any change take place in the interest, title or possession of the property whether by legal process or judgment or by voluntary act of the insured or otherwise. It is claimed by the appellants that the issuing and delivery to the sheriff of executions on the property against Caraher, and the advertisement of sale by the sheriff amounted to a seizure and levy and avoided the policies.

There was no possession, in fact, taken by the sheriff. It is not claimed that the recovery of the judgments simply made the policies void. It has been, in effect, held to the contrary. (*Chamberlain* v. *Ins. Co. of N. A.*, 20 N. Y. St. Rep., 546, and cases cited.) Nor was the issuing of the execution, followed by the notice of sale, a levy upon the property within the meaning of the policy.

This was, in substance, held in *Colt* v. *Phenix Insurance Company* (54 N. Y., 595). It was there said that the " levy of an execution " referred only to a levy on personal property, as a levy upon real estate is unnecessary and is now unknown to the law. (See, also, 1 May on Insurance, § 274.) It follows that the issuing of executions and notice of sale did not affect the policies.

( 5.) The policy issued by the Royal company on April 2, 1887, had upon its face in writing the following clauses or indorsements : " Other insurance permitted concurrent in form herewith." " Loss, if any, payable to L. M. Thomson, executor, to the extent of his mortgage interest."

The policies issued by the Home and the Springfield at the same date had similar clauses. The policy of the American Central, issued on the 23d of August, 1887, had the clause " Other concurrent insurance permitted," but no clause as to loss being payable to the mortgagee. The policy of the Standard company, issued January 20, 1888, and of the Newark, issued October 26, 1887, had the clause, " Other insurance permitted without notice until required," and no clause as to the payment of the loss to the mortgagee.

It is claimed by the Royal, Home and Springfield companies that their policies are void because other policies were obtained that did

not have the loss payable to the mortgagee ; and it is claimed by the American Central that its policy is void because other policies were obtained or held that did have the loss payable to the mortgagee. The argument is, that there was, in effect, a warranty by the assured that all other insurance should be concurrent in form, and that this warranty was broken in regard to the three companies first named by the failure to make the loss in the other cases payable to the mortgagee, and was broken in regard to the American Central by the fact that the loss in the first three cases was so payable.

This reasoning is founded on the idea that the provisions as to other insurance, and as to the payment of the loss, are parts of the policy, while, in fact, they are not.   They are simply indorsements, and treated as such, and made by the companies in pursuance of provisions of the policy requiring indorsements in regard to other insurance, or in regard to the payment of loss to other than the assured.   The provision as to the payment of loss didn't refer to the other permitted insurance, but to the loss on the policy upon which the indorsement was made.   Besides, it is not made clear that other insurance would fail to be concurrent in form, because the loss, if any, in the one case, would be payable to the assured, and in the other the company had, by indorsement, assented to its payment to a mortgagee as his interest might appear.   The subject of the insurance and the interest insured would be the same in each case.   The insurance in all the cases would run together.

( 6.) The policy issued by the Newark company insured Mr. Caraher to the amount of $500 upon the organ in the church.   The referee allowed the plaintiff upon this the sum of $433.33, with interest from February 1, 1890, and this forms part of the judgment against the Newark company.   The claim of that company is that there is no proof that Mr. Caraher had any title or interest in the organ. There seems to be no answer to this claim.   The only proof of title or interest given by Caraher is the deed upon the foreclosure.   The organ was not included in that or in the mortgage by the corporation. It was not real estate.   The possession that Caraher had was under the deed and would not afford any presumption of ownership of the organ.  ·The amount allowed for the organ must, therefore, be deducted from the recovery.

It is suggested on the part of the appellants that the altars in the church were personal property, and, therefore, not covered by the insurance. We are, however, of the opinion that they were part of the real estate,

No other questions are presented. It follows that all of the judgments, except the one against the Newark company, should be affirmed, with costs. The judgment against the Newark company should be modified by deducting therefrom the sum of $433.33, with interest from February 1, 1890, and as so modified affirmed, without costs upon this appeal to either party.

HARDIN, P. J., and MARTIN, J., concurred.

So ordered.