EPHRAIM · D. MOWRY, RESPONDENT, v. AGRICULTURAL INSURANCE COMPANY, APPELLANT, IMPLEADED WITH ANOTHER, DEFENDANT.

*Insurance — oral application therefor, not affected by a subsequent unsigned application — knowledge of the agent is that of the insurance company — a mortgage for past and future advances — a new mortgage given in settlement is not a further incumbrance.*

E. D. Mowry mortgaged his farm to R. L. Ingersoll for $400, nominally, but the mortgage was, in fact, to be a security for all present and future indebtedness of Mowry to Ingersoll. The agent of an insurance company, having solicited the insurance required to be given by this mortgage, Mowry stated truly to him, in reply to the question as to incumbrances, that there was a first mortgage to one Dilts and a second mortgage to Ingersoll upon the premises, but no written application to the company for insurance was signed by Mowry.

The agent made out an application, not signed by any one, in which the question: "How much is the real estate incumbered?" was answered, "None." The policy provided that it should be void if the incumbrances were not stated in the application or indorsed in writing upon the policy.

More than a year later, but while the policy was in force, Mowry and Ingersoll had an accounting, and for the sum due the latter by the former he gave a new mortgage, to secure payment of the sum of $570, to the giving of which the company did not consent.

A fire having occurred an action was brought on the policy for the recovery of the loss resulting therefrom.

*Held,* that the policy was issued upon the oral application of Mowry, and that he was not bound by the written misstatements made by the agent in the unsigned application prepared by the agent.

That, in the preparation of the written application, the agent was acting for the company, and not for the insured.

That knowledge by the agent of the incumbrances was the knowledge of the company; and that with such knowledge it could not defeat the policy, because a fact was not stated in the application which the company knew to exist.

That as the second mortgage given to Ingersoll merely settled the amount due, under the provision which had been made for present debts and future advances existing in the first mortgage, it did not increase the incumbrance or the hazard.

That, therefore, the property had not become "incumbered by mortgage" after the issuing of the policy, and that the provision requiring the consent of the company to a further incumbrance did not apply.

APPEAL by the defendant, the Agricultural Insurance Company, from a judgment of the Supreme Court, entered, after a trial before a referee, in the office of the clerk of the county of Oswego on the

9th day of January, 1891, on which trial a recovery was directed in favor of the plaintiff for $2,000, with interest and costs, with a provision that Susannah M. Ingersoll, as executrix of Robert L. Ingersoll, deceased, had an equitable lien upon said sum for $788.31, with interest.

On and prior to the 14th day of March, 1879, the plaintiff was the owner of certain premises situated in the town of Richland, Oswego county, N. Y. On that day he duly executed, acknowledged and delivered to Robert L. Ingersoll a mortgage thereon, the consideration named therein being the sum of $400. The condition of said mortgage was as follows: "This grant is intended as security for the payment of any and all indebtedness or liabilities of every nature, kind or description which the said Ephraim D. Mowry has become liable to pay, or may hereafter become liable to pay or be owing to said Robert L. Ingersoll." The mortgage also contained a provision that the mortgagor should keep the building erected, or to be erected, upon the lands, insured against loss or damage by fire. This mortgage was recorded on the twentieth of March, and was intended as a continuing obligation and security as between the parties thereto.

On the 11th of July, 1883, the plaintiff was erecting a dwelling-house on the premises, which was substantially enclosed, when one Stowell, who was the duly commissioned and authorized agent of the appellant, having power to receive proposals for insurance on farm buildings and residences, to collect premiums, consent to assignment of policies and attend to the business of his agency in accordance with the rules and regulations of the company, with such instructions as might be given by its officers, came to the premises of the plaintiff and solicited the insurance upon the building being erected thereon. At that time the plaintiff, in answer to the question propounded to him by the defendant's agent, "How much is the real estate encumbered?" replied, in substance, that there was at that time a mortgage on the premises to one Dilts for $200, and also a mortgage to one Robert L. Ingersoll to secure a running account and advances, the amount of which was unknown at that time, and could not be ascertained until the plaintiff should have a settlement with Ingersoll. The plaintiff thus fairly informed the defendant's agent of the existence of the mortgage which he had

given to Ingersoll, and that it was intended as a continuing security for such past and future indebtedness as then existed or should be subsequently created.

No written application was made or signed by the plaintiff. But afterwards, and not in the presence of the plaintiff or with his knowledge, Stowell made out a written application for insurance in favor of the plaintiff to the amount of $1,000 on his unfinished building, and sent the same to the defendant. It was in the hand-writing of the company's agent, but not signed either by the plaintiff or by such agent, nor did it purport to be signed by either. This application was forwarded to the defendant's home office by its agent Stowell, and is the application referred to in the policy. In the application, the answer to the question, " How much is the real estate encumbered ? " was incorrectly stated, and answered as " None." After the defendant had received this application, and on the 11th of July, 1883, it issued the policy in suit, whereby, in consideration of eight dollars and fifty cents premium, it insured the plaintiff in the sum of $1,000 on his dwelling-house for the term of three years from the 11th of July, 1883. The premium was paid by Stowell, and by him delivered to the insurance company, and the policy was subsequently delivered to the plaintiff by the company, with the name of Stowell as its agent, at Pulaski, N. Y., indorsed thereon by it.

Among others, the policy contained the following provisions : " This policy of insurance is based upon a written application on file in the company's office, purporting to be signed by the applicant or by his authority, and all statements contained therein are warranties on the part of the assured. * * * If the property, whether real or personal, or any part thereof, shall be encumbered by mortgage, judgment or otherwise, it must be so represented to the company in the application or endorsed in writing upon this policy, otherwise this entire policy and every part thereof shall be void. * * * If the property, either real or personal, or any part thereof, shall become encumbered by mortgage, judgment or otherwise, * * * then, and in every such case, and in either of said events, this entire policy and every part thereof shall be null and void, unless the written consent of the company at the home office is obtained. * * * No agent is permitted to give the consent of

the company in any other case required by the provisions of this policy or to waive any stipulation or condition contained therein, but in all cases where the consent of the company is required by this policy, other than consent to the assignment of the policy, such consent must be obtained in writing and at the home office; and no statement made or information given by the assured prior to the issuing of this policy to any agent or solicitor of this company shall be deemed to be made to this company unless the same is reduced to writing and incorporated in the application hereinbefore mentioned or endorsed upon this policy. * * * It is a part of this contract that any person, other than the assured, who may have secured this insurance to be taken by this company, shall be deemed to be the agent of the assured, and not of this company, under any circumstances whatever or in any statement or transaction relating to this insurance. * * * This policy is not assignable without the written consent of the company or its agent endorsed thereon or annexed thereto; and any assignment without such consent will render the policy null and void."

Subsequent to the issuing of this policy, and before the loss under it, Stowell, as agent of the defendant, at the request of the plaintiff increased the amount of insurance on said building and other property, issued and delivered to the plaintiff an instrument, partly written and partly printed, which was as follows:

" *Secretary Agricultural Insurance Company, Watertown, N. Y.* :

[This blank is never to be given to the insured.]

Please consent to the following entry in policy No. 952; agency at Pulaski, N. Y.; name, E. D. Mowry; date of policy, July 11, 1883; date of entry, January 23, 1884. There is added to this policy $300 on dwelling-house; $400 on furniture, provisions and family wearing apparel, printed books, pictures and silver and plated ware, and sewing machine therein; $100 on organ; barn, $300; produce $100; wagons, carriages, harnesses, cutters, robes therein, $200   N. S. Stowell, Agent. Extra premium, $9.92."

The extra premium of nine dollars and ninety-two cents was paid to the agent Stowell by the plaintiff, and by Stowell transmitted to the defendant. The foregoing instrument was the only evidence the plaintiff ever had of such increased insurance. It was issued to

the plaintiff by Stowell with the knowledge and consent of the defendant, and for the purpose of increasing the amount of such insurance. It was in the handwriting and signed by Stowell as such agent. Stowell subsequently, and after the fire, assumed to cancel a portion of said increased insurance by drawing a pen or pencil through the following words and figures contained in the paper evidencing such increased insurance : " B. No. 1, $300; produce $100 ; wagons, carriages, harnesses, cutters, robes therein, $200."

On or about the 21st day of August, 1884, the plaintiff had an accounting and settlement with said Ingersoll for the matters included in and intended to be secured by said mortgage, which included transactions between the parties occurring after as well as before its execution and delivery. Upon such accounting there was found to be due Ingersoll the sum of $570. The plaintiff thereupon and on the 21st day of August, 1884, executed and delivered to Ingersoll his bond in the penal sum of $1,140, conditioned to pay the sum of $570, in the manner therein mentioned, and he and his then wife Polly S. Mowry executed and delivered to Ingersoll a mortgage upon the same premises described in the mortgage formerly given, conditioned for the payment of the sum of $570, as follows : " Five hundred and seventy dollars to be paid on the first day of December next, with interest, or at least three hundred dollars of it and interest, and the balance in one year from the date hereof." This mortgage was recorded in the clerk's office of Oswego county on the 26th of August, 1884. Both the bond and mortgage contained the usual insurance clause and were at the time of the trial wholly unpaid. Intermediate the execution and delivery of the mortgage first mentioned and the execution and delivery of the bond and second mortgage, Helen H. Mowry, the plaintiff's wife, who joined in the first mortgage, died, and plaintiff intermarried with Polly S. Mowry.

The appellant had no notice of the execution and delivery of the bond and mortgage last given, and gave no consent thereto as provided in its policy. The plaintiff gave no notice thereof to the appellant, but did notify the agent Stowell that he intended to give a mortgage on the premises to Ingersoll and desired him to notify the company when the mortgage was placed thereon and obtain its consent thereto. The agent directed the plaintiff to bring or

send him the policy so that he might send it to the company to have the necessary consent indorsed, but the plaintiff neglected to send it, and no consent, written or otherwise, was ever given or indorsed upon the policy.

On or about the 21st of August, 1884, the appellant, through its agent Stowell, by an instrument in writing dated on that day and signed by him, consented to the $200 mortgage, with loss, if any, payable to Frank Dilts, as his interest might appear. On the 18th of October, 1884, a fire occurred by which the property insured was substantially destroyed, without fault on the part of the plaintiff. The value of the dwelling-house was the sum of $2,000, and the personal property so destroyed the sum of $773.25. Due notice of loss and proofs thereof were furnished to the defendant by the plaintiff, which were satisfactory. No question was made as to the sufficiency of the plaintiff's notice or proofs of loss.

The foregoing facts were found by the referee, who held, as matter of law : That the plaintiff was not bound by the errors, omissions or misstatements contained in the unsigned application forwarded to the appellant by its agent ; that in all that was done by Stowell in relation to said policy he acted as the agent of the appellant, and not for the plaintiff, and that any provisions in the policy to the contrary were waived ; that the plaintiff was not bound by any of the stipulations or agreements contained in such application, but that the policy was based upon the oral application by plaintiff to the agent, which contained ample notice of the existence of the first mortgage, and that the company had, by issuing the policy, in fact, consented to and waived the written indorsement thereof upon the policy ; that the defendant was legally bound by the oral application and the statements then made, and the policy issued thereon was valid ; that the knowledge of the agent was imputable to the company, and it was bound thereby ; that the company having such knowledge of the statements made by the plaintiff on application for such policy was estopped after the fire from setting up the existence of either the first or second mortgage as a forfeiture of the policy to avoid payment of the plaintiff's loss ; that the mortgage first mentioned was given as a continuing security for the payment of all liabilities and debts then existing or which might arise between the parties, and the second mortgage was given after a settlement between the parties

of their accounts, which were secured to be paid by the first; that the giving of the second mortgage superseded the first and was a continuation thereof given to secure the same indebtedness, and that in contemplation of law the first and second mortgages were identical; that the second mortgage did not further incumber, or create any new lien or incumbrance on, the property insured after the issuing of the policy; that the plaintiff was entitled to recover the amount of the policy and interest.

The referee directed judgment against the appellant for the amount insured by its policy.

*A. H. Sawyer*, for the appellant.

*N. B. Smith*, for the respondent.

MARTIN, P. J.:

The facts as found by the referee were fully sustained by the evidence, and the only question presented is, whether his conclusions of law were justified by the facts as found.

As the case now stands, and as it was presented on the trial, the only real controversy between the parties is, whether the policy in suit was void because of the existence of the mortgages given by the plaintiff to Robert L. Ingersoll.

That the plaintiff had, before the policy was issued, executed and delivered to Ingersoll a mortgage as security for future as well as present indebtedness was clearly shown by the mortgage which was recorded, and was undisputed.

That such a mortgage stands as security for the liabilities of the mortgagor, whether existing when it was given or created subsequently, seems to be well settled; and where a mortgage is given as security for future advances, and it is so stated therein, the sum named as the consideration is of no importance. (*Robinson* v. *Williams*, 22 N. Y., 380; *Miller* v. *Lockwood*, 32 id., 293; *Brown* v. *Kiefer*, 71 id., 610.)

Therefore, when the policy in suit was issued, Ingersoll had a mortgage that was a valid incumbrance upon the property insured, not only for any indebtedness that then existed, but for such future indebtedness to Ingersoll as might thereafter be incurred by the plaintiff. The appellant's agent was fully informed of the

existence of this incumbrance, and of its nature, extent and purpose. Possessing such information, he forwarded to the appellant an application for the policy in suit, in which he stated that there were no incumbrances upon the property. The application was in the handwriting of the company's agent, which must have been known to its officers, and did not purport to be signed by any one. Upon this unsigned application the company issued the policy in suit.

It is now claimed by the company that the existence of that incumbrance when the policy was issued rendered it void under the conditions contained therein, and that the plaintiff should not recover thereon. That under the conditions of the policy it would have been void by reason of the existence of that mortgage, if the plaintiff had made the written application introduced in evidence in this case, or if he had not informed the company's agent of the existence of such mortgage, there can be but little doubt. But that was not the case. Here there was no written application by the plaintiff. It was made by the defendant's agent. It was incorrect, and made by the agent with a full knowledge of the facts. It would seem that under such circumstances the appellant could not justly claim that its policy should be avoided because the incumbrance was not stated in the application or indorsed on its policy.

A contract of insurance is not defeated by a misrepresentation contained in an application prepared by the agent of an insurance company in the name of the insured, but without his authority, and upon which the company acted in issuing the policy. (*Benninghoff* v. *Agricultural Ins. Co.*, 93 N. Y., 496; *Sprague* v. *Holland Purchase Ins. Co.*, 69 id., 128; *Vilas* v. *N. Y. Central Ins. Co.*, 72 id., 590; *Ames* v. *N. Y. Union Ins. Co.*, 14 id., 253.) So where an agent authorized to fill out an application in the name of the assured misstates the information given by the assured and, thereby misleads the company, the error of the agent cannot be imputed to the assured. Such misstatements, as between the parties, are to be regarded as those of the agent, and not of the assured, and consequently, would not avoid the policy. (*Rowley* v. *Empire Ins. Co.*, 36 N. Y., 550; *Bennett* v. *Agricultural Ins. Co.*, 106 id., 243.)

Another principle which seems to be established by the authorities in this State is that an insurance company cannot insist upon a condition declaring the contract to be void if a certain fact or situa-

tion exists, not represented ·to the company in. the application or indorsed on the policy, where the company or its authorized agent, at the time it was made, knew of the fact or situation which is relied upon to defeat the contract. (*Van Schoick* v. *Niagara F. Ins. Co.*, 68 N. Y., 434; *Richmond* v. *Niagara F. Ins. Co.*, 79 id., 230; *Short* v. *Home Ins. Co.*, 90 id., 16.)

The doctrine of these cases is recognized in *Sanders* v. *Cooper* (115 N. Y., 279, 286), and the principles are there stated by Judge ANDREWS in substantially the language here employed.

The evidence which discloses that the plaintiff neither made nor authorized any written application for the policy in suit, that the application was made by and was in the handwriting of the defendant's agent, that when the policy was issued the company indorsed thereon the name of Stowell as its agent, thereby representing and assuring the plaintiff that Stowell was authorized to represent the company in matters pertaining to the policy, was, we think, sufficient to justify the referee in holding that the knowledge of the agent was imputable to the company. (*Partridge* v. *Commercial F. Ins. Co.*, 17 Hun, 95; *Broadhead* v. *Lycoming Ins.· Co.*, 14 id., 452; *Chase* v. *People's F. Ins. Co.*, id., 456; *Vanderhoef* v. *Agricultural Ins. Co.*, 46 id., 333; *Smith* v. *Home Ins. Co.*, 47 id., 30; *Van Schoick* v. *Niagara F. Ins. Co.*, 68 N. Y., 434; *Sprague* v. *Holland Purchase Ins. Co.*, 69 id., 128; *Whited* v. *Germania F. Ins. Co.*, 76 id., 415.)

An application of the principles of law stated, to the facts in this case, would seem to justify the referee's holding that the existence of the first mortgage did not render the policy void. This leads us to consider the effect upon the policy of the second mortgage given by the plaintiff to Ingersoll. In examining this question it should be remembered that the mortgage first given was a continuing security intended to cover all the indebtedness that might exist between the parties, so that it, in fact, covered all the indebtedness which was secured by the second mortgage. It is true the plaintiff's second wife joined in this mortgage, but her right of dower was subject to the first mortgage, so that there was no actual increase of security, and consequently no added incumbrance.

Although the giving of the second mortgage in no way increased

the incumbrance upon the property insured, still the appellant contends that it rendered the policy void. To sustain that contention, it relies upon the condition in the policy which provides that "if the property * * * shall become incumbered by mortgage, judgment or otherwise * * * this entire policy and every part thereof shall be null and void unless the written consent of the company at the home office is obtained." Thus, the question is presented whether the giving of the second mortgage was an incumbrance of the property insured within the intent and meaning of that provision. As we have already seen, it in no way increased the amount of the incumbrance thereon. It at most only settled the amount. The manifest purpose of that condition in the policy was to prevent the assured from incumbering the property, thereby reducing his interest therein, and thus increasing the hazard. As there was in this case no increase or addition to the incumbrance, the interest of the insured in the property was in no way reduced by this second mortgage, and was not within the purpose of the provision.

We are of the opinion that, under the circumstances developed by the evidence, and upon the facts as found by the referee, it was properly held that the execution and delivery of the second mortgage to Ingersoll did not create such an incumbrance upon the property insured as rendered the policy void, although the written consent of the company was not obtained. (*Russell* v. *Cedar Rapids Ins. Co.*, 71 Iowa, 69.) If these conclusions are correct, it follows that the judgment should be affirmed, as we have examined all the exceptions to which our attention has been called by the appellant, but have found none that would justify a reversal of the judgment.

Judgment must be affirmed, with costs.

MERWIN, J., concurred.

Judgment affirmed, with costs.