Eugene H. Ladd and William E. Smallman, Appellants, *v.* Ætna Insurance Company, Respondent.

*Insurance policy — waiver of condition as to ownership — manufactory ceasing to be used — when the policy is made void thereby.*

An indorsement upon an insurance policy, that "It is hereby understood that the title of this property is now vested in P. King and N. Trushaw. Loss, if any, is made payable to Ladd and Smallman as interest may appear" covers any insurable interest which Ladd and Smallman may have in the insured property, and waives the condition of the policy requiring a specific statement of such interest therein.

A condition in an insurance policy to the effect that, if the property insured be a manufacturing establishment and ceases to be operated for more than ten consecutive days, or if the building therein described, whether intended for occupation by the owner or a tenant, be and become vacant or unoccupied and so remain for ten days, that the policy should be void, is not violated by the brief temporary suspension of the operations of the mill, caused by the sickness of the owner of the property, although exceeding the period of ten consecutive days named in the policy.

The suspension of work that would avoid a policy in such a case must be either permanent or something more than a suspension of work from some temporary cause.

Appeal by the plaintiffs, Eugene H. Ladd and William E. Smallman, from a judgment of the Supreme Court, entered in the office of the clerk of Franklin county on the 14th day of January, 1893, and also from an order denying the plaintiffs' motion for a new trial, made upon the minutes of the court.

The policy of insurance to recover for a loss, under which this action was brought, provided, among other things, that it should be void if the property insured ceased "to be operated for more than ten consecutive days, or if any change other than by death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increased hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise, or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

*John P. Kellas,* for the appellants.

*A. H. Sawyer,* for the respondent.

PUTNAM, J. :

It is not claimed that the policy of insurance on which this action was brought, when issued, was invalid. Plaintiffs were the owners of the property insured, and received the policy from the duly authorized agent of defendant.

But it is urged that the policy became void in consequence of the contract executed, after the issuing thereof, to King & Trushaw, which transferred to the latter the equitable title to the mill, and by the alleged erroneous indorsement on said policy, that the title was vested in them.

Notwithstanding the contract, plaintiffs remained the legal owners of the property, and could insure it, probably for the whole value, but certainly to the extent of their interest in it. (*Ins. Co.* v. *Updegraff*, 21 Penn. St. 513; *Tallman* v. *Atlantic Fire and Marine Ins. Co.*, 4 Abb. Ct. App. Dec. 345; *Wood* v. *The Northwestern Ins. Co.*, 46 N. Y. 421.)

Plaintiffs remaining the legal owners of the property and with an insurable interest therein, their valid policy did not become invalid, in consequence of the contract, if they correctly represented to defendant's agent the facts as to such transfer. There was evidence on the trial from which the jury could have found that defendant's agent was notified that the sale to King & Trushaw was by contract, and hence, a nonsuit having been granted, we must now assume that the agent was truly informed as to the said contract. Under such circumstances we understand it is well settled that the mistake of the agent in making the indorsement will not avoid the policy. (*Mowry* v. *Agricultural Ins.*, 64 Hun, 144; *Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434; *Berry* v. *American Central Ins. Co.*, 132 id. 49.)

We do not regard the cases cited by respondent (*Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356–364; *Allen* v. *G. A. Ins. Co.*, 123 id. 6) parallel to the case under consideration. These are not cases where a valid policy was issued to the insured and by a mistake of the agent of the insurers the proper indorsement of a transfer was not placed upon the policy of insurance, the agent being duly and properly notified of such transfer.

The indorsement made was as follows :

"End't made on policy No. 9932 Ætna Ins. Co., June 30, 1891.

"It is hereby understood that the title of this property is now vested in P. King and N. Trushaw, loss, if any, is made payable to Ladd & Smallman as interest may appear,

"S. B. SKINNER, *Agent.*"

It has been decided that the company by the words "as interest may appear" insured the plaintiffs for any insurable interest which they might have in the insured property and waived the condition requiring a specific statement of such interest in the policy. (*De Wolf* v. *Capital City Ins. Co.,* 16 Hun, 116; *Burke et al.* v. *The Niagara Fire Ins. Co.,* 34 N. Y. St. Repr. 702, 703.)

We have assumed that in making the indorsement above set out the agent incorrectly stated that the title to said insured property was in King & Trushaw. The latter, however, under the contract, were the equitable owners of the property, and there are authorities holding that such vendees who have taken possession under a contract have the title and may insure *as the owners.* (*Pelton* v. *The Westchester Fire Ins. Co.,* 13 Hun, 23; 77 N. Y. 605.)

We, therefore, conclude that the policy was not avoided in consequence of the contract to King & Trushaw.

The court below granted the nonsuit on the ground that the insured property, being a manufacturing establishment, ceased to be operated as such for at least ten days at some time prior to the fire, and hence, under the conditions in the policy, it became void. The conditions referred to provide that if the subject insured be a manufacturing establishment and ceases to be operated for more than ten consecutive days, or if the building therein described, whether intended for occupancy by the owner or a tenant, be and become vacant or unoccupied and so remain for ten days, that the policy shall be void.

We think the position of appellants correct that ordinarily the term "occupy," as applied to such a sawmill, must be deemed synonymous with "operate." It is held that "to constitute occupancy of a building used for manufacturing purposes, there must be some practical use or employment of the property." (*Halpin* v. *Phœnix Ins. Co.,* 118 N. Y. 174.)

A condition of the kind above set out is to be construed in view

of the circumstances and character of the property insured, and in view of the contingency as to its use within the reasonable contemplation of the parties.    (*Caraher* v. *Royal Ins. Co.*, 63 Hun, 93.)

The property insured was a sawmill run by water power. It was destroyed by fire on January 9, 1892. The mill was kept running up to December ninth, when King, the sawyer, was taken ill, and work was suspended until three days before the fire, when the witness Trushaw sawed two logs. He testified he was intending to go to the mill, the following Monday, to saw the logs there. When King became ill, he had arranged to saw out a bill of lumber the next day. There was quite a quantity of logs at the mill to be sawed, and arrangements had been made to have others drawn, and logs were drawn there during King's illness, and up to the time of the fire, and lumber taken away. He stopped work on account of the illness.

If an insurance policy on a sawmill run by water power is vitiated by a temporary suspension of the operation of the mill in consequence of the illness of the sawyer, absence of logs, low water, or any circumstances which must necessarily cause such suspension, from time to time, such a policy would have but little value.

*Whitney* v. *Black River Ins. Co.* (72 N. Y. 117; 9 Hun, 37) was a case of insurance upon a sawmill; at the time of the fire no sawing had been done for sixteen or eighteen days, but there were logs in the yard which the plaintiff intended to saw; lumber piled in the yard and in the mill from which sales were made from time to time before the fire. It will be seen that the facts were similar to those in this case. In that case it is said: "Delays and interruptions incident to the business of conducting a sawmill, although involving a temporary discontinuance of the active use of the mill, for sawing purposes, would not, we think, make the mill 'vacant and unoccupied' within the meaning of the policy. Take the case of the insurance of a church building or schoolhouse, or cider mill. Would the fact that the church was closed for six days consecutively each week be a violation of the condition in question, or would the schoolhouse in vacation time, or the cider mill, when no apples were to be had, be without the protection of the policy? These illustrations serve to show that the condition against vacancy and non-occupation is to be construed and applied in view of the sub-

ject-matter of the contract, and of the ordinary incidents attending the use of the insured property."

In *Poss* v. *Western Assurance Co.* (40 Am. Rep. 68), it was held that a clause similar to the one in question in an insurance policy is not avoided by a temporary cessation of work caused by an epidemic. In *Albion Lead Works* v. *Williamsburgh City Fire Ins. Co.* (2 Fed. Rep. 480), it is determined that such a clause is not violated by a temporary suspension of work at the mill.

We think the above-cited cases place the proper construction on such a provision in a policy. The suspension of work that would avoid a policy in such a case must be either permanent or something more than a suspension of work from some temporary cause. The distinction between this case and such cases as *Halpin* v. *Phœnix Ins. Co.* (118 N. Y. 165), is apparent. In the latter case the insured property had been occupied as a morocco factory, but the tenant had left, and the building was locked up and in the hands of the agent to rent, and it remained in that position for months. It had ceased to be operated at all until another tenant could be found. The suspension of work in the case cited was very different from the temporary suspension in the case under consideration, which was only continued during the illness of the sawyer.

We conclude that the policy of insurance in question was not rendered void by the brief suspension of the operations of the mill in consequence of King's illness, and that the court erred in taking the case from the jury, and in granting the motion for a nonsuit, and hence, without considering the other questions raised in the case, the judgment should be reversed, a new trial granted, costs to abide the event.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment reversed, new trial granted, costs to abide the event.